# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LEROY SMITH,**

        **Plaintiff,**

**-vs-**                              **Case No. 6:05-cv-1570-Orl-28DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for Social Security benefits. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED.**

### *PROCEDURAL HISTORY*

Plaintiff protectively filed applications for a period of disability, disability insurance benefits and supplemental security income on December 26, 2002 (R. 4, 63-65, 79).[1] These applications were denied initially and upon reconsideration (R. 4, 33-36). Plaintiff then requested and received a hearing before an administrative law judge ("the ALJ"), and a decision was rendered on April 14, 2005, denying Plaintiff's applications (R. 24-32). Plaintiff sought review by the Appeals Council, and tendered additional evidence (R. 10). The ALJ's decision became the final decision of the Commissioner after the Appeals Council denied Plaintiff's request for review (R. 7-10). This action followed.

---

[1] While not critical to the instant determination, the Court notes that it appears that Plaintiff's application for supplemental security income has not been made a part of the administrative record (R. 4).

### NATURE OF CLAIMED DISABILITY

Plaintiff alleges disability beginning July 22, 2002, due to headaches, dizziness, pain in both hands that may be early carpal tunnel syndrome (CTS), groin pain, and low back pain (R. 25, 63, 85, 102, 105, 113A).

*Summary of Evidence Before the ALJ*

Plaintiff, born in 1967, was 37 years old at the time of the ALJ's decision (R. 63), with a general equivalency diploma and one year of college education (R. 91). He has past relevant work experience as a cabinet maker, security officer, dishwasher, cook, cemetery maintenance person, houseman, and dietary aide (R. 94).

The medical evidence is set forth in the ALJ's decision. By way of summary, Plaintiff presented to Ormond Beach Urgent Care Center on March 25, 2002, due to complaints of wrist pain (R. 115-16). He reported that he was struck on the left hand and wrist at work two weeks earlier. There was subjective tenderness at the distal radius of the left wrist, with no swelling, crepitus, or ecchymoses, and range of motion and function were intact. X-rays were negative for fracture. *Id.* Plaintiff was given a wrist splint, pain medication and was referred for orthopedic follow-up (R. 114).

On April 8, 2002, Plaintiff was seen by orthopaedist Scott Silas, M.D., for his left wrist pain (R. 120-22). On examination, there was no evidence of soft tissue swelling, abrasions, or ecchymosis, and Dr. Silas remarked that Plaintiff "has good, strong resisted wrist extension as well as finger extension." (R. 121). Sensation was intact, and follow-up x-rays showed no evidence of fracture or dislocation. Impression was left wrist contusion. It was felt that Plaintiff would spontaneously improve with the passage of time. *Id.*

On return visit on April 22, 2002, Plaintiff reported that he had a great deal of pain on the dorsum of the wrist radiating down the long finger and was now complaining of pain radiating up the arm towards the shoulder (R. 119). The impression was slowly resolving wrist contusion and extensor tendinitis of the hand. Plaintiff returned on May 3, 2002, reporting tenderness primarily on the radial aspect of the thumb and hand (R. 118). On examination, Dr. Silas noted that Plaintiff complained of pain up into the arm but "I cannot see how this is at all related to his hand and wrist injury." *Id.* The impression was wrist contusion with mild first dorsal compartment tenosynovitis. As Plaintiff refused to proceed with the recommended next step of a tendon sheath injection, he was released from care with a 1% impairment and instructions to return to work, with no excessive use of the left hand (R. 117-118). He was also to avoid lifting with the left hand and any pushing or pulling. (R. 118, 127).

On July 18, 2002, Plaintiff presented to Halifax Medical Center, complaining of right wrist pain due to over-use syndrome (R. 134). Plaintiff reported that he was not taking any medication, and examination of his right wrist by the attending physician revealed no positive findings. There was no obvious swelling or deformity; the pulses were intact; capillary refill was brisk and strength was intact; and there was no Tinel sign on percussion over the transverse carpal ligament (R. 134). A velcro splint was recommended for the right wrist (R. 134).

Plaintiff underwent an examination by Dr. Joanne Werntz, apparently with respect to Plaintiff's worker's compensation claim, on October 7, 2002 (R. 26, 152-64). Plaintiff reported that subsequent to his left wrist injury, his right wrist had developed similar symptoms due to his compensation with that wrist for what he could not do with his left wrist. Dr. Werntz's impression was early bilateral Carpal Tunnel Syndrome in the wrist and left middle finger and right ring finger triggering (R. 151, 154). It was recommended that Plaintiff undergo an NCS/ENG of the left upper

extremity and a Cortisone injection. (R. 154).  As Plaintiff refused the injection, Dr. Werntz prescribed Bextra and recommended continued use of the left wrist splint, as well as a surgical release of the right ring finger (R. 26, 154-55).  Plaintiff was deemed able to perform light duty work, with restrictions of no pushing or pulling with either hand, no climbing, no repetitive lifting and no lifting over 15 pounds (R. 152-55).

On October 23, 2002, Plaintiff underwent electro diagnostic studies conducted by Mitchell J. Freed, M.D., which revealed no significant electro diagnostic evidence of left carpal tunnel syndrome (R. 146-48, 151).

Plaintiff returned to Dr. Werntz on November 4, 2002 (R. 151).  Physical examination remained unchanged.  The impression was triggering of the right ring finger and left middle finger and bilateral carpal tunnel syndrome, negative left NCS/EMG. It was recommended that he undergo surgical release of the A-1 pulleys of the right ring finger and left middle finger with possible tenosynovectomy, and Plaintiff elected to proceed.  He was to remain off work for 6 weeks (R. 151). While Plaintiff agreed to undergo the surgical release, Plaintiff testified that he did not undergo the procedure, but elected to settle his worker's compensation claim for $7,500.00 (R. 302).

Plaintiff underwent a disability evaluation by Hugh Coleman, D.O., on April 23, 2003 (R. 173-78). His chief complaints included allegations of bilateral carpal tunnel syndrome, bilateral hand and wrist pain and stiffness in the hands with limited motions. Examination revealed full range of motion of the upper extremities (R. 175, 177-78). Resistence testing against abduction of the shoulders was 5/5 bilaterally with no reproducible fatigue; muscle stretch reflexes were 2+/4 bilaterally for the biceps and brachioradialis reflexes; vibratory sensations and sharp to dull sensations were intact bilaterally in the upper extremities (R. 175). Grip strength was 3/5 bilaterally and fine manipulation

-4-

was within normal limits (R. 175). Dr. Coleman observed that Plaintiff was able to touch each fingertip with his thumb, open and close the door with both his left and right hands individually, and button and unbutton his shirt with both hands individually (R. 175). He was noted to have a trigger finger of the right fourth phalanx with a flexion contracture. No significant joint swelling was appreciated, but Plaintiff could not make full fists. He had limited range of motion of his phalanges. Dr. Coleman's

assessment was trigger finger of the right ring finger, mild trigger finger of the left middle finger, carpal tunnel syndrome per history bilaterally with positive Tinel's sign on the left, obesity, left shoulder pain, and possible underlying diabetes mellitus per history (R. 176). Dr. Coleman did not note any restrictions due to Plaintiff's medical conditions.

Plaintiff was seen at Halifax Medical Center on April 30, 2003, due to dizziness and headache complaints (R. 186-87). The report notes that Plaintiff "was diagnosed with diabetes by a doctor who was trying to get him disability without the aid of glucose tests." (R. 186). Lab testing on April 30, 2003, however indicated a blood sugar level of 110. *Id.* Diagnoses were history of dizziness not related to position, not requiring medication prior to today; headache, not requiring any medication; and history of diabetes without history of elevated blood sugar, urine sugar, or any laboratory component. (R. 187).

Plaintiff was seen by Reginald Bowden, M.D. on May 22, 2003, for evaluation of Plaintiff's suspicion of diabetes and dizziness (R. 213). Testing by AccuCheck meter indicated a blood sugar reading of 100. No restrictions were noted.

Plaintiff presented to the emergency room on June 13, 2003, for headache (R. 181-83). He

reported no nausea or vomiting, but noted feeling diffusely and generally weak, and having intermittent episodes of dizziness. On examination, strength appeared to be mildly decreased, but still rated 5 out of 5. It was noted that Plaintiff "exhibit[ed] no deficits in performing normal activities;" was able to ambulate without difficulty and had a negative Romberg finding.[2] A CT scan of the head was found to be unremarkable (R. 182, 184). He was discharged with a diagnosis of chronic headache, of uncertain etiology. An analgesic was ordered, and Plaintiff was to rest in a cool, dark room (R.181-84).

Plaintiff presented to Dr. Bowden, his treating physician, in June and August 2003, complaining of persistent headaches (R. 244-251). Medication was prescribed. On November 18, 2003, although it was noted that Plaintiff could not go to a neurologist for an evaluation because of financial reasons, the assessment shows that his headaches and shoulder pain had improved (R. 242). Return visit on December 9, 2003, indicated that Plaintiff had right shoulder pain, but he refused the recommended treatment of a cortisone injection (R. 239). Ice and Aspercreme were prescribed.

An MRI of the brain dated December 9, 2003, was negative (R. 241).

Plaintiff continued to see Dr. Bowden for a variety of complaints periodically, over the course of 2004. On February 16, 2004, Plaintiff continued to complain of headaches. He also reported complaints of insomnia and depression (R. 235). Zoloft was prescribed. His headache complaints continued on April 5, 2004, with Plaintiff noting that he had no headaches in West Palm, but that they restarted upon his return (R. 281). There was a question as to whether his headaches could be environmental, and he was directed to clean air fresheners from his home. *Id.* On June 2, 2004, he

---

[2]The Romberg Test is a neurological test to detect poor balance.

returned for follow up on his headache and fatigue (R. 278). It was noted that he was experiencing stress from his mother-in-law (R. 278). On August 27, 2004, he complained of bilateral inguinal pain following lifting furniture (R. 276). He was told to avoid heavy lifting. *Id.* On September 14, 2004, he returned with complaints of back pain. Physical therapy was recommended (R. 274).

On September 16, 2004, Plaintiff was seen at Halifax Medical Center for physical therapy due to suffering a low back injury stemming from bilateral groin pain while lifting (R. 266). Upon evaluation, it was felt that Plaintiff had likely lumbo pelvic muscle strain and his potential for rehabilitation was fair to good. Physical therapy was provided until September 23, 2004. (R. 261-69). A CT scan of the pelvis dated October 15, 2004 was noted to be unremarkable (R. 273).

In addition to the Plaintiff's medical records, the administrative record before the ALJ contains reports from two non-examining state agency physicians, Alan G. Tetlow, M.D., and Nicholas H. Bancks, M.D., dated January 5, 2003, and August 5, 2003, respectively (R. 165-72, 223-30). They both indicated that Plaintiff retained the residual functional capacity for light work with limited pushing/pulling and handling with the upper extremity, and that Plaintiff should avoid vibration and/or hazards (R.165-72, 223-30).

Plaintiff appeared at his hearing, and testified as to his pain and limitations (R. 297). Plaintiff testified that he was unable to work due to his hand injuries, and his headaches. Plaintiff testified that he cries when he gets bored and "down." (R. 304). Plaintiff stated that he could stand for five, ten minutes without his back, legs and feet hurting and can sit for 10, 15 minutes without having to stand up (R. 307). He felt that he could walk 100 feet, and has headaches 24 hours a day, seven days a week (R. 309). Plaintiff acknowledged the lack of positive medical findings to explain his complaints, noting; "I'm in a lot of pain, and the doctors just don't know why." (R. 308). When questioned

regarding how long he has had pain, Plaintiff stated that he has had pain for 10, 15, maybe even 20 years. When asked how he could work over the past two decades, he responded "you have to do what you have to do." (R. 310). When asked why he could not work now as he had worked in the past, Plaintiff responded that "nobody's going to hire me" due to perceived worker's compensation liability (R. 311).

A Vocational Expert ("VE") appeared and testified at the hearing (R. 313). The VE was presented with a hypothetical of a person with Plaintiff's background and an inability to walk distances, so only occasional walking and occasional use of hands for gross manipulation, sit/stand option, light level. The VE opined as to jobs that existed for such a person.

In a decision dated April 14, 2005, the ALJ determined that Plaintiff had the impairments of headaches, dizziness, pain in both hands that may be early carpel tunnel syndrome, groin pain and low back pain, but did not have an impairment or combination of impairments that met or equaled the Listings. The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform a wide range of light work (R. 30-31 Findings 6, 11), and that Plaintiff could not return to his past work, but was able to perform other work, consistent with the VE's testimony (R. 31). Consequently, Plaintiff was found not disabled.

On May 18, 2005, more than a month after the date of the ALJ's decision, Plaintiff was evaluated by Elek Ludvigh, Ph.D. for personality assessment and psychodiagnosis (R. 287-294). Following testing and a one hour interview, Dr. Ludvigh opined that Plaintiff suffered from a Bipolar II Disorder, including alternating periods of hypomanic and depressed mood, although his hypomanic moods were most prominent and frequent (R. 289). It was felt that he was incapable of managing stable employment for at least twelve months without a positive response to psychiatric treatment. Dr.

Ludvigh noted that Plaintiff had marked limitations in the following areas: ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to accept instructions and respond appropriately to criticism from supervisors (R. 291- 92).

### *THE STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff asserts that the decision of the ALJ is not supported by substantial evidence in that: 1) the hypothetical presented to the VE was incomplete; 2) the ALJ erred in not fully developing the record, with respect to Plaintiff's allegation of depression; and 3) the ALJ erred in his credibility finding.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he or she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then s/he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, s/he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, s/he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then s/he is disabled. 20 C.F.R. § 404.1520(f). Here, the ALJ made the disability determination at step five, with the assistance of testimony from a Vocational Expert.

Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where

the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

As noted by Plaintiff, here, the ALJ found that Plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for up to 6 hours and stand/walk for up to 6 with normal breaks and with an option to shift positions to alleviate pain; he could climb stairs or ramps, but not ladders, scaffolds, and ropes; he could stoop, kneel, crouch and crawl, had limited ability to handle manipulative functions and should avoid extreme temperature changes, humidity and vibrations (R. 30- 31, Finding 6). At the hearing, the ALJ posed a hypothetical to the VE which included walking limited to only occasional and occasional use of the hands for gross manipulation, sit/stand option, and light level work. The VE identified jobs available such as order clerk, surveillance system monitor, call out operator and blood donor unit assistant (R. 317). Plaintiff contends that the hypothetical was incomplete in that it did not include Plaintiff's *specific* testimony regarding the ability to walk only 100 feet without resting, and failed to note that Plaintiff testified that he could only sit for 15 or 20 minutes. Moreover, Plaintiff asserts that the hypothetical did not include Plaintiff's allegations of depression. These objections, however, are of no moment.

The hypothetical presented to the VE, quoted above, included the restriction to occasional walking and a sit/stand option. As such, the hypothetical presented is not inconsistent with Plaintiff's testimony, as the ability to walk more than 100 feet at a time without rest is not shown to be without the definition of "occasional walking" and a sit/stand option is responsive to an allegation of inability to sit for long periods without standing. Moreover, as noted by the Commissioner in her brief,

Plaintiff was represented by an attorney at the hearing, and had an opportunity to cross-examine the VE regarding these limitations, but did not do so. Although Plaintiff contends that: "It is respectfully submitted that the VE's testimony would have been different had she been told that he could only stand for 5-10 minutes, walk for 100 feet and sit for 15 to 20 minutes," there is nothing in the record to support this supposition, and such restrictions were not found to exist by the ALJ, in any event.

As for the allegations of depression, first and foremost, Plaintiff did not identify depression as a basis of his alleged disability. *See* R. 24-25; 63, 85, 102, 105, 113A. Indeed, at hearing, Plaintiff did not claim that his depression was vocationally limiting, but characterized it as a side effect of his boredom. There is no evidence in the medical records that Plaintiff experienced limitations or was restricted from any activities by his physician due to depression, nor is there any evidence of medical treatment for depression, save for a trial of Zoloft (which Plaintiff claimed was ineffective) and Wellbutrin, prescribed by his family doctor. He was not referred to a psychiatrist, nor did Plaintiff seek or receive any other mental health evaluation or treatment during the applicable period of time. Plaintiff was repeatedly noted to be alert and oriented in all spheres, and no clear manifestations of depressive illness or decompensation were noted.[3] In a form completed by Plaintiff and submitted to the Commissioner, he stated that he was able to remember things, concentrate on what he was doing, follow written and spoken instructions, deal with deadlines and schedules, and got along well with others (R. 111-12). As Plaintiff did not claim, and the ALJ did not find, depression to be an impairment, and this finding is supported by substantial evidence, it was not error to fail to include it in the hypothetical given to the VE.

---

[3] Occasionally, there is a reference to fatigue, but it is not specifically correlated to depression, and may well be a side effect to the medication Plaintiff was taking for his headaches.

Related to this objection is Plaintiff's claim that the ALJ should have ordered a consultative examination to further develop the record with respect to Plaintiff's depression, in view of the evidence submitted to the Appeals Council regarding Plaintiff's bipolar diagnosis. It is fundamental that the ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Nonetheless, here, the issue is whether the ALJ's decision was amply supported, based on the record before him. It is undisputed that the evidence submitted to the Appeals Council was developed *after* the date of the ALJ's decision. In view of the fact that Plaintiff did not claim to be disabled based on an impairment of depression, the ALJ cannot be faulted for failing to consider and develop evidence that was not before him at the time of the decision. In such circumstances, however, the Court must inquire as to whether remand is appropriate, under sentence six of 42 U.S.C. § 405(g), which provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1) that there is new, non-cumulative evidence; 2) that the evidence is material – relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level. *See Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Keeton v. Deptartment of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).

Applied here, the evidence is certainly new in that it simply did not exist at the time of the application through the determination date. Plaintiff, however, cannot meet the second prong of the

test in that the evidence is not material to *this* claim for disability. New evidence must relate to the time period on or before the date of the decision. *Falge v. Apfel,* 150 F.3d 1320, 1324 (11th Cir. 1998). Here, the evaluation, based on a one time, one hour interview, was conducted after the ALJ's determination, and well after the date of alleged onset of disability. There is no indication in the report of Plaintiff's condition prior to the evaluation, nor can the Court presume that the diagnosis 'relates back' to that period of time. *See Archer v. Commissioner of Social Security,* 176 Fed. Appx. 80, 82, 2006 WL 988483 (11th Cir. April 14, 2006) (not selected for publication) ("The medical evidence may be relevant to deterioration, but it is not clear that it is relevant to the initial denial of benefits, as this court does not consider "implicit" conclusions that the medical condition existed for an extended period of time that would cover the period of disability before the ALJ"); *Newsome v. Barnhart*, 444 F. Supp.2d 1195, 1202 (M.D. Ala. 2006) (records immaterial if they do not relate to the time before the ALJ's decision and do not discuss claimant's condition other than by history during the period for which benefits were denied); *Otto v. Commissioner of Social Security,* 171 Fed. Appx. 782, 2006 WL 700934 (11th Cir. 2006) (not selected for publication) (test results immaterial where they were from a different time period and contained no discussion as to plaintiff's condition on the date of the determination).

The final objection relates to the ALJ's finding that Plaintiff's claims of disabling limitations were not totally credible. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988). Here, the ALJ specified that he found Plaintiff's allegations to be generally credible, "but not to the extent that he is disabled from all work." (R. 28). This statement is adequately supported by substantial evidence.

Plaintiff asserts that error is apparent as "the ALJ provided no reason for making such [a] conclusion or in finding that his testimony was [not] fully credible." (Doc. No. 11 at 8). The ALJ, however, noted that Plaintiff was not fully credible for the reasons set forth in the body of the decision (R. 30). The medical evidence detailed by the ALJ in his decision indicated that no treating physician found Plaintiff to be disabled due to his medical condition. The vast majority of all objective tests regarding Plaintiff's condition were unremarkable and do not support a finding of a disabling condition. Indeed, Plaintiff himself noted that none of his doctors could establish an objective basis for his symptoms. The ALJ stated that he gave greater weight to the reports and opinions of Drs. Silas, Werntz and Coleman, and the residual functional capacity found by the ALJ is consistent with those reports. The RFC is also consistent with the non-examining state agency reports. Most importantly, Plaintiff fails to identify what *specific* allegation was not credited by the ALJ. Indeed, the ALJ credited many of Plaintiff's subjective allegations, and included those limitations in the RFC.

Assuming Plaintiff is asserting that the ALJ did not credit his allegations of pain as disabling, Plaintiff has not shown that he met the "pain standard."

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the

objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

As to an assertion of disabling pain, Plaintiff testified that he has lived and worked with pain "24/7" for the past 10 to 20 years, and cannot work now because "nobody's going to hire me" for worker's compensation liability reasons (R. 311). Plaintiff's testimony does not support a contention that the pain is disabling, as he readily admits that he has been in "constant" pain for years, but was still able to work, as "you have to do what you have to do." To the extent Plaintiff asserts disabling pain from headaches, and that this pain is "new," there is no objective evidence confirming the severity (or, indeed, the existence) of disabling headache pain. The MRI of the brain and a CT scan were negative, and the records indicate no significant treatment or restrictions due to the alleged pain.[4] The ALJ's findings with respect to Plaintiff's credibility are adequately supported by substantial evidence.

---

[4] Indeed, on April 30, 2003, the examining physician noted that Plaintiff's headache required no medication at all. Note, too, that Plaintiff's treating physician felt that the headache could be due to Plaintiff's environment, and recommended changing the air fresheners in his home.

### *CONCLUSION*

The decision of the Commissioner was made in accordance with appropriate legal standards and is supported by substantial evidence. As such, the decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly, terminate all pending matters and close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 15, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record